No. 26-40147

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

MARCUS DANIEL FLORES,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

---

# BRIEF FOR APPELLANT

---

PHILIP G. GALLAGHER
Federal Public Defender
Southern District of Texas

SCOTT A. MARTIN
Assistant Federal Public Defender
Appellate Division Chief
Attorneys for Appellant
440 Louisiana Street, Suite 1350
Houston, Texas 77002-1056
Telephone: (713) 718-4600

**CERTIFICATE OF INTERESTED PERSONS**
United States v. Marcus Daniel Flores,
No. 26-40147

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.

1. Hon. David S. Morales, United States District Judge.
2. Hon. Jason B. Libby, United States Magistrate Judge.
3. Mr. Marcus Daniel Flores, Defendant-Appellant.
4. United States of America, Plaintiff-Appellee.
5. Counsel for Plaintiff-Appellee: United States Attorney Aaron Reitz; former Acting United States Attorney John G.E. Marck; former United States Attorney Nicholas J. Ganjei; and Assistant United States Attorneys Yasmine K. Tucker, Liesel L. Roscher, Ashley E. J. Martin (in district court), and Carmen Castillo Mitchell (on appeal).
6. Counsel for Defendant-Appellant: Federal Public Defender Philip G. Gallagher; and Assistant Federal Public Defenders Lila M. Garza (in district court) and Scott A. Martin (on appeal).

**CERTIFICATE OF INTERESTED PERSONS – (cont'd)**

These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

s/ Scott A. Martin
SCOTT A. MARTIN

## STATEMENT RESPECTING ORAL ARGUMENT

The lead issue in this appeal is a discrete, fully preserved sentencing issue: whether the district court erred in treating Mr. Flores's prior Texas aggravated robbery, an offense that can be committed recklessly, as a "crime of violence" under USSG §§ 2K2.1(a)(4)(A) and 4B1.2(a) (Issue One). The issue turns on the question left open in *United States v. Wickware*, 143 F.4th 670, 675 n.2 (5th Cir. 2025): "whether the Guidelines' definition of robbery includes a narrower mens rea than the Texas Penal Code requires."

Without an expedited decision in this appeal, which Mr. Flores is requesting in a motion filed contemporaneously with this brief, it is possible that Mr. Flores will complete his sentence of imprisonment before the Court has an opportunity to decide Issue One.[1] Mr. Flores thus waives oral argument to expedite this Court's consideration of his appeal.[2]

---

[1] According to the Bureau of Prisons, Mr. Flores's projected release date is October 16, 2026. *See* BOP "Inmate Locator," at https://www.bop.gov/inmateloc/ (search for Reg. 64128-511). While Mr. Flores's challenge to his sentence will not become moot in October, given that his sentence includes a term of supervised release, the only remedy available then would be to ask the district court to reduce the term of supervised release to account for the excess prison time that he served. *See United States v. Kendall*, 180 F.4th 692, 698-99 (5th Cir. 2026); *United States v. Baldemoro*, 178 F.4th 933, 936-37 (5th Cir. 2026).

[2] The brief also raises two additional issues: an as-applied Commerce Clause challenge to 18 U.S.C. § 922(g)(1) (Issue Two) and a Fourth Amendment challenge to Mr. Flores's warrantless misdemeanor arrest under the in-the-presence rule (Issue Three). Both are foreclosed by circuit precedent, and Mr. Flores raises them only to preserve them for further review. Oral argument would not significantly aid the Court in deciding these foreclosed issues.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS .......... i

STATEMENT RESPECTING ORAL ARGUMENT .......... iii

TABLE OF CONTENTS .......... iv

TABLE OF CITATIONS .......... vii

STATEMENT OF JURISDICTION .......... 1

STATEMENT OF THE ISSUES .......... 2

STATEMENT OF THE CASE .......... 3

SUMMARY OF THE ARGUMENT .......... 13

ARGUMENT .......... 15

**ISSUE ONE RESTATED**: The district court, at sentencing, reversibly erred by applying a base offense level of 20 under USSG § 2K2.1(a)(4)(A), when Mr. Flores's prior Texas aggravated robbery was an offense that could be committed *recklessly* and thus did not qualify as a crime of violence under USSG § 4B1.2(a)'s force clause or enumerated offense clause. .......... 15

A. Standard of review .......... 15

B. The district court mischaracterized Mr. Flores's prior Texas aggravated robbery offense as a crime of violence. .......... 15

C. The government cannot show that this error was harmless. .......... 27

## TABLE OF CONTENTS – (cont'd)

**Page**

**ISSUE TWO RESTATED**: 18 U.S.C. § 922(g)(1) is unconstitutional as applied to Mr. Flores because it allowed a conviction based only on the firearm's manufacture outside of, and its subsequent importation to, the state in which it was possessed, without regard to any involvement by Mr. Flores in such transportation or in the economic activity associated with the purchase or sale of the firearm. (Foreclosed issue.) ......31

A. Standard of review ........................................................................31

B. 18 U.S.C. § 922(g)(1) is unconstitutional as applied to Mr. Flores, as it allowed a conviction based only on the firearm's and ammunition's manufacture outside of, and subsequent importation to, the state in which they were possessed. .....................31

C. The error may become plain, and, if so, the error also affected Mr. Flores's substantial rights and should be corrected by this Court because it seriously affects the fairness, integrity, and public reputation of the judicial proceedings. ..................................38

**ISSUE THREE RESTATED**: Whether the warrantless search of Mr. Flores qualified as a search incident to a lawful arrest, when Officer Rivera arrested him for the Texas misdemeanor of criminal trespass that was not committed in her presence, and the Fourth Amendment incorporates the founding-era common-law rule that officers lack authority to make a warrantless arrest for a misdemeanor not committed in their presence. (Foreclosed issue.)..........................................................40

A. Standard of review ........................................................................40

B. Officer Rivera's warrantless arrest of Mr. Flores for a misdemeanor not committed in her presence was unlawful, so the ensuing search cannot be justified as incident to a lawful arrest. .......40

C. This argument is foreclosed by circuit precedent, but Mr. Flores raises it to preserve the issue for further review. ...............................47

**TABLE OF CONTENTS – (cont'd)**

**Page**

D. Neither of the government's alternative theories below would save the search: the *Terry* theory fails on this record, and the consent theory cannot be resolved on this record at all. ....................50

CONCLUSION ....................................................................................54

CERTIFICATE OF SERVICE ....................................................................55

CERTIFICATE OF COMPLIANCE ..............................................................56

## TABLE OF CITATIONS

Page

### CASES

*Alderman v. United States*, 131 S. Ct. 700 (2011) .......................................... 32, 35

*Arizona v. Johnson*, 555 U.S. 323 (2009) ........................................................... 50

*Bad Elk v. United States*, 177 U.S. 529 (1900) ................................................... 42

*Borden v. United States*, 593 U.S. 420 (2021) .......................................... 23, 25, 27

*Bumper v. North Carolina*, 391 U.S. 543 (1968) ................................................ 52

*Com. v. Taylor*, 5 Binn. 277, 1812 WL 1254 (Pa. 1812) ...................................... 45

*Craver v. State*, No. 02-14-00076-CR, 2015 WL 3918057
(Tex. App.—Fort Worth June 25, 2015, pet. ref'd) ..................................... 22, 25

*Descamps v. United States*, 570 U.S. 254 (2013) ........................................... 17-18

*Esquivel-Quintana v. Sessions*, 581 U.S. 385 (2017) ............................... 17, 22, 24

*Fields v. City of South Houston*, 922 F.2d 1183
(5th Cir. 1991) .......................................................................................... 14, 47-48

*Floyd v. State*, 714 S.W.3d 9
(Tex. Crim. App. Nov. 13, 2024) .................................................................. 21-22

*Gonzales v. Raich*, 545 U.S. 1 (2005) ................................................................. 34

*Grandia Gonzalez v. United States*, 604 U.S. ___,
145 S. Ct. 529 (2025) ........................................................... 14, 42-43, 47-49

*Henderson v. United States*, 568 U.S. 266 (2013) ................................................ 38

*Johnson v. United States*, 559 U.S. 133 (2010) ................................................... 17

## TABLE OF CITATIONS – (cont'd)

**Page**

### CASES – (cont'd)

*Kurtz v. Moffitt*, 115 U.S. 487 (1885) .................................................. 42

*Kyllo v. United States*, 533 U.S. 27 (2001) .................................................. 48

*Lange v. California*, 594 U.S. 295 (2021) .................................................. 43, 48

*Leocal v. Ashcroft*, 543 U.S. 1 (2004) .................................................. 27

*Mathis v. United States*, 579 U.S. 500 (2016) .................................................. 18-19, 22

*Molina-Martinez v. United States*, 578 U.S. 189 (2016) .................................................. 39

*Moncrieffe v. Holder*, 569 U.S. 184 (2013) .................................................. 17

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) .................................................. 35-37

*Ordonez v. Gonzalez, No. EP-23-CV-99-KC*, 2024 WL 1250181 (W.D. Tex. Mar. 25, 2024) .................................................. 47

*Ornelas v. United States*, 517 U.S. 690 (1996) .................................................. 51

*People v. Goduto*, 21 Ill. 2d 605, 174 N.E.2d 385 (1961) .................................................. 44

*Rawlings v. Kentucky*, 448 U.S. 98 (1980) .................................................. 42

*Riley v. California*, 573 U.S. 373 (2014) .................................................. 41

*Scarborough v. United States*, 431 U.S. 563 (1977) .................................................. 32-34, 36-37

*Schad v. Arizona*, 501 U.S. 624 (1991) (plurality opinion) .................................................. 19

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) .................................................. 51

*Snead v. Com.*, 212 Va. 803, 188 S.E.2d 197 (1972) .................................................. 44

## TABLE OF CITATIONS – (cont'd)

**Page**

### CASES – (cont'd)

*State v. Fort*, 3 & 4 Dev. & Bat. 332, 20 N.C. 332, 1839 WL 521 (1839) .......... 45

*Street v. Surdyka*, 492 F.2d 368 (4th Cir. 1974) .......... 48

*Taylor v. United States*, 495 U.S. 575 (1990) .......... 17

*Terry v. Ohio*, 392 U.S. 1 (1968) .......... 4, 14, 50-51, 53

*Torres v. Madrid*, 592 U.S. 306 (2021) .......... 43, 48

*United States v. Alcantar*, 733 F.3d 143 (5th Cir. 2013) .......... 32, 38

*United States v. Alderman*, 565 F.3d 641 (9th Cir. 2009) .......... 34

*United States v. Alderman*, 593 F.3d 1141 (9th Cir. 2010) .......... 34

*United States v. Arias-Robles*, 477 F.3d 245 (5th Cir. 2007) .......... 51

*United States v. Baldemoro*, 178 F.4th 933 (5th Cir. 2026) .......... iii

*United States v. Barlow*, 17 F.3d 85 (5th Cir. 1994) .......... 41

*United States v. Barrett*, 102 F.4th 60 (2d Cir. 2024) .......... 25

*United States v. Bates*, 24 F.4th 1017 (5th Cir. 2022) .......... 23

## TABLE OF CITATIONS – (cont'd)

Page

### CASES – (cont'd)

*United States v. Bonner*, 159 F.4th 338
(5th Cir. 2025) ........................................................................................ 34

*United States v. Burris*, 856 Fed. Appx. 547
(5th Cir. 2021) (unpublished) .......................................................................... 23

*United States v. Calderon-Peña*, 383 F.3d 254
(5th Cir. 2004) (*en banc*) (per curiam)
*overruled in part on other grounds by*
*United States v. Reyes-Contreras*, 910 F.3d 169
(5th Cir. 2018) ........................................................................................ 15

*United States v. Chesney*, 86 F.3d 564
(6th Cir. 1996) ........................................................................................ 34

*U.S.A. v. Defendant(s)*, No. CR 24-00210-MWF,
2026 WL 1848549 (C.D. Cal. June 23, 2026) ..................................................... 47

*United States v. Dominguez*, 954 F.3d 1251
(9th Cir. 2020), *overruled on other grounds by*
*United States v. Taylor*, 596 U.S. 845 (2022) ..................................................... 25

*United States v. García-Ortiz*, 904 F.3d 102
(1st Cir. 2018) ........................................................................................ 25

*United States v. Garner*, 28 F.4th 678
(5th Cir. 2022) ........................................................................................ 16, 27

*United States v. Garrett*, 24 F.4th 485
(5th Cir. 2022) ........................................................................................ 21

*United States v. Goines*, No. 25-10569, 2026 WL 311948
(5th Cir. Feb. 5, 2026) (unpublished) ................................................................. 26

## TABLE OF CITATIONS – (cont'd)

**Page**

### CASES – (cont'd)

*United States v. Goodspeed*, No. 25-10209, 2025 WL 2682520 (5th Cir. Sept. 19, 2025) (unpublished) ............ 26

*United States v. Gray*, 260 F.3d 1267 (11th Cir. 2001) ............ 25

*United States v. Guzman-Rendon*, 864 F.3d 409 (5th Cir. 2017) ............ 27-30

*United States v. Hemani*, 608 U.S. ___, 146 S. Ct. 1677 (2026) ............ 33-34

*United States v. Hernandez*, 825 F.2d 846 (5th Cir.1987) ............ 42

*United States v. Hill*, 63 F.4th 335 (5th Cir. 2023) ............ 25

*United States v. Hill*, 927 F.3d 188 (4th Cir. 2019) ............ 32

*United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016) ............ 18

*United States v. Ho*, 94 F.3d 932 (5th Cir. 1996) ............ 40-41, 47

*United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32 (1812) ............ 44

*United States v. Ibarra-Luna*, 628 F.3d 712 (5th Cir. 2010) ............ 28

*United States v. Ivey*, 60 F.4th 99 (4th Cir. 2023) ............ 25

## TABLE OF CITATIONS – (cont'd)

**Page**

## CASES – (cont'd)

*United States v. Jenson*, 462 F.3d 399
(5th Cir. 2006) .......... 52

*United States v. Johnson*, 880 F.3d 226
(5th Cir. 2018) .......... 17

*United States v. Jones*, 565 U.S. 400 (2012) .......... 43, 48

*United States v. Kendall*, 180 F.4th 692
(5th Cir. 2026) .......... iii

*United States v. Kuban*, 94 F.3d 971
(5th Cir. 1996) .......... 32-34

*United States v. Lopez*, 514 U.S. 549 (1995) .......... 31-33, 35, 38

*United States v. Martinez-Contreras*, 709 Fed. Appx. 297
(5th Cir. 2018) (unpublished) .......... 29

*United States v. Martinez-Romero*, 817 F.3d 917
(5th Cir. 2016) .......... 28-29

*United States v. Mecham*, 950 F.3d 257
(5th Cir. 2020) .......... 29

*United States v. Montiel-Cortes*, 849 F.3d 221
(5th Cir. 2017) .......... 18, 22

*United States v. Moore*, 71 F.4th 392
(5th Cir. 2023) .......... 17

*United States v. Morrison*, 529 U.S. 598 (2000) .......... 33, 38

*United States v. Patton*, 451 F.3d 615
(10th Cir. 2006) .......... 34

## TABLE OF CITATIONS – (cont'd)

**Page**

## CASES – (cont'd)

*United States v. Rabinowitz*, 339 U.S. 56 (1950),
*overruled on other grounds by*
*Chimel v. California*, 395 U.S. 752 (1969) ........................................................ 41

*United States v. Rodriguez-Flores*, 25 F.4th 385
(5th Cir. 2022) .......................................................................................... 18

*United States v. Rosales-Mireles*, 585 U.S. 129 (2018) ....................................... 39

*United States v. Rose*, 127 F.4th 619
(5th Cir. 2025) .......................................................................................... 21

*United States v. Santiesteban-Hernandez*, 469 F.3d 376
(5th Cir. 2006) ........................................................................................ 23-24

*United States v. Seekins*, No. 21-10556, 2022 WL 3644185
(5th Cir.) (unpublished), *reh'g en banc denied*,
52 F.4th 988 (5th Cir. 2022) ................................................................. 31-32, 34

*United States v. Solis*, 299 F.3d 420
(5th Cir. 2002) .......................................................................................... 51

*United States v. Soriano*, 976 F.3d 450
(5th Cir. 2020) .......................................................................................... 52

*United States v. Squire*, No. 25-30324, 2026 WL 2089721
(5th Cir. July 20, 2026) (per curiam) ............................................................ 34, 38

*United States v. Stevens*, 70 F.4th 653
(3d Cir. 2023) ............................................................................................ 25

*United States v. Storey*, 571 F. Supp. 3d 1296
(M.D. Fla. 2021) ........................................................................................ 34

## TABLE OF CITATIONS – (cont'd)

**Page**

## CASES – (cont'd)

*United States v. Tanksley*, 848 F.3d 347 (5th Cir.), *supplemented*, 854 F.3d 284 (5th Cir. 2017) .................... 18, 24

*United States v. Tompkins*, 130 F.3d 117 (5th Cir.1997) .................... 51

*United States v. Toure*, 965 F.3d 393 (5th Cir. 2020) .................... 31

*United States v. Urbina-Fuentes*, 900 F.3d 687 (5th Cir. 2018) .................... 39

*United States v. Wadley*, 59 F.3d 510 (5th Cir. 1995) .................... 41

*United States v. Wickware*, 143 F.4th 670 (5th Cir. 2025) .................... iii, 23-24, 26

*United States v. Williams*, 111 Fed. Appx. 221 (5th Cir. 2004) (unpublished) .................... 48

*United States v. Ybarra*, No. 20-10520, 2021 WL 3276471 (5th Cir. July 30, 2021) (unpublished) .................... 23

*Virginia v. Moore*, 553 U.S. 164 (2008) .................... 43, 48

*Wilson v. Arkansas*, 514 U.S. 927 (1995) .................... 43

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 8.................... 31

U.S. Const. amend. IV .................... *passim*

## TABLE OF CITATIONS – (cont'd)

**Page**

## STATUTES AND RULES


18 U.S.C. § 841(c) .......... 16

18 U.S.C. § 921(a)(3) .......... 8

18 U.S.C. § 922 .......... 32, 35-36

18 U.S.C. § 922(g) .......... 33-34

18 U.S.C. § 922(g)(1) .......... *passim*

18 U.S.C. § 924(c) .......... 25

18 U.S.C. § 924(a)(8) .......... 3

18 U.S.C. § 1951(b)(1) .......... 25

18 U.S.C. § 3553 .......... 12, 29-30

18 U.S.C. § 3553(a) .......... 29

18 U.S.C. § 3742 .......... 1

26 U.S.C. § 5845(a) .......... 16

28 U.S.C. § 1291 .......... 1

Fed. R. App. P. 4(b)(1)(A)(i) .......... 1

Fed. R. App. P. 4(b)(2) .......... 1

Fifth Cir. R. 28.2.1 .......... i

Model Penal Code § 221.1 (1980) .......... 44

Tex. Code Crim. Proc. art. 14.01 .......... 43

## TABLE OF CITATIONS – (cont'd)

**Page**

### STATUTES AND RULES – (cont'd)

Tex. Penal Code § 29.01(1) .... 21

Tex. Penal Code § 29.02(a) .... 20

Tex. Penal Code § 29.02(a)(1) .... 20

Tex. Penal Code § 29.02(a)(2) .... 20

Tex. Penal Code § 29.03(a) .... 21

Tex. Penal Code § 30.05 .... 45

Tex. Penal Code § 30.05(a) (2024) .... 5, 46, 49

### SENTENCING GUIDELINES

USSG App. C, amend. 798 .... 17

USSG App. C, amend. 822 .... 17, 27

USSG § 2K2.1 .... 15

USSG § 2K2.1(a)(4) .... 10

USSG § 2K2.1(a)(4)(A) .... *passim*

USSG § 2K2.1(a)(6)(A) .... 10, 28

USSG § 2K2.1, comment. (n.1) .... 16

USSG § 3E1.1(a) .... 10, 28

USSG § 3E1.1(b) .... 10

## TABLE OF CITATIONS – (cont'd)

**Page**

## STATUTES AND RULES – (cont'd)

USSG § 4A1.1(a) .......... 10

USSG § 4B1.1, comment. (n.1) .......... 16

USSG § 4B1.2 .......... 17

USSG § 4B1.2(a) .......... *passim*

USSG § 4B1.2(a)(1) .......... 16, 27

USSG § 4B1.2(a)(2) .......... 10, 16

USSG § 4B1.2(e) .......... 15

USSG § 4B1.2(e)(3) .......... 10, 17, 24

USSG Ch. 5, Pt. A (Sentencing Table) .......... 9, 10, 28

## MISCELLANEOUS

1 W. LaFave, Subst. Crim. L. § 2.1(c) (3d ed. 2025) .......... 44

3 W. LaFave, Search and Seizure 5.1(c) (6th ed. 2024) .......... 43

3 W. LaFave, Subst. Crim. L. § 21.2 (3d ed. 2025) .......... 44

Letter from the U.S. Department of Justice, Criminal Division, Appellate Section to the Honorable Carlton W. Reeves, Chair, U.S. Sentencing Commission (Feb. 3, 2025) at 10-11, *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20250212/DOJ.pdf .......... 26

## STATEMENT OF JURISDICTION

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1291, as this is an appeal from a final judgment of conviction and sentence entered by the United States District Court for the Southern District of Texas. Jurisdiction also lies under 18 U.S.C. § 3742.

The judgment appealed from was entered on the docket on March 16, 2026. Mr. Flores timely filed his notice of appeal on March 12, 2026, following the announcement of judgment and sentence on March 11, 2026. The appeal is timely. *See* Fed. R. App. P. 4(b)(1)(A)(i) and (2).

## STATEMENT OF THE ISSUES

**ISSUE ONE:** Whether the district court, at sentencing, reversibly erred by applying a base offense level of 20 under USSG § 2K2.1(a)(4)(A), when Mr. Flores's prior Texas aggravated robbery was an offense that could be committed *recklessly* and thus did not qualify as a crime of violence under USSG § 4B1.2(a)'s force clause or enumerated offense clause.

**ISSUE TWO:** Whether 18 U.S.C. § 922(g)(1) is unconstitutional as applied to Mr. Flores because it allowed a conviction based only on the firearm's manufacture outside of, and its subsequent importation to, the state in which it was possessed, without regard to any involvement by Mr. Flores in such transportation or in the economic activity associated with the purchase or sale of the firearm. (Foreclosed issue.)

**ISSUE THREE:** Whether the warrantless search of Mr. Flores qualified as a search incident to a lawful arrest, when Officer Rivera arrested him for the Texas misdemeanor of criminal trespass that was not committed in her presence, and the Fourth Amendment incorporates the founding-era common-law rule that officers lack authority to make a warrantless arrest for a misdemeanor not committed in their presence. (Foreclosed issue.)

## STATEMENT OF THE CASE

On February 26, 2025, a federal grand jury in the Corpus Christi Division of the Southern District of Texas returned a single-count indictment charging Defendant-Appellant Marcus Daniel Flores ("Mr. Flores") with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (Count 1). ROA.147-48. The firearm and ammunition were discovered after police officers, suspecting that Mr. Flores had earlier committed a misdemeanor "criminal trespass," stopped him as he was walking down a public street (roughly two to three blocks away from the residence that reported the trespass), and then frisked him. ROA.74-75, 77-78, 90-91.

Mr. Flores moved to suppress evidence of the firearm and ammunition. ROA.54-59. He argued that the stop "was invalid at its inception" because "none of the exceptions to the warrant requirement" applied. ROA.56-57. In so arguing, he pointed out that the suspected criminal trespass was "a misdemeanor offense, not a felony," committed outside the presence of police officers. ROA.57. He explained that the officers "were not given any indication that [he] was dangerous" and "[t]here was no indication that [he] tried to break into the residence or made any threats." ROA.57. He also contended that he "did not consent to being pat down," noting "[t]he officer told him she intended to do it before she asked if she could pat him down." ROA.57.

The government, in its written response, argued: “Officer Rivera had reasonable suspicion to stop [Mr. Flores pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968),] to investigate a complaint of criminal trespass. It was reasonable for Officer Rivera to frisk [Mr. Flores] for personal safety purposes. Additionally, even before frisking [Mr. Flores], Officer Rivera asked for permission to pat down [Mr. Flores] and he consented.” ROA.70.

An evidentiary hearing was held before the district court on September 4, 2025. ROA.152-217 (hearing transcript). At the hearing, the government presented the testimony of Aransas Pass Police Officer Kassandra Rivera (“Officer Rivera”) and two exhibits that were admitted without objection. ROA.157-98, 318-19. The exhibits were (1) footage from Officer Rivera’s body-worn camera, and (2) a map of the area. ROA.155, 318-18.[3] At the conclusion of the hearing, the government argued that the stop and frisk were valid under the *Terry v. Ohio* framework, or, alternatively, Mr. Flores consented to the search. ROA.199-203. The defense maintained that no exception to the warrant requirement applied here. ROA.204-17.

On September 8, 2025, the district court issued a written order denying the motion to suppress. ROA.74-79. In its order, the court made the following findings based on Officer Rivera’s suppression-hearing testimony and the footage from her body-worn camera:

---

[3] The defense called no witnesses and presented no other evidence. ROA.199.

> On November 14, 2024, Officer Kassandra Rivera was on duty as a police officer with the Aransas Pass Police Department. While patrolling, she received a call from dispatch regarding a criminal trespass.[4] Dispatch relayed that they had received a call that Defendant Marcus Flores was seen on a property for which he had an outstanding criminal trespass warning. The caller reported that they had seen Flores on security camera footage trying to open a door. The caller identified Flores by name, stated that he was wearing black shorts and a white t-shirt, and told dispatch that he was headed [w]est when he left the property. At some point before she encountered Flores, Officer Rivera learned that the call to dispatch was made by Flores' brother.
>
> After receiving this information from dispatch, Officer Rivera began searching the area for Flores. After driving around for a short time, Officer Rivera spotted Flores on foot, heading west on W. Matlock Ave, roughly two to three blocks away from the residence which reported the criminal trespass. Flores was wearing a white t-shirt and black shorts, and Officer Rivera testified that she recognized him on sight because they had attended high school at the same time. *Based on the information from dispatch, the report of a criminal trespass, and her positive identification of Flores, Officer Rivera made the decision to stop Flores*. Officer Rivera estimates this occurred within five minutes of receiving the call from dispatch regarding the criminal trespass.
>
> After sounding her siren and flashing her lights, Officer Rivera stopped, exited her patrol car, and approached Flores. After informing Flores that police had received a call from his brother, Officer Rivera stated[,] "I'm going to pat you down, is it ok if I pat you down?" Flores agreed to the pat-down and Officer Rivera located a box of ammunition in his front right pocket, instructed Flores to put his hands behind his back, and cuffed him. She then uncovered a pistol in his front left pocket. Eventually, Officer Rivera placed Flores under arrest both for criminal trespass and being a felon in possession of a firearm.

ROA.74-76 (footnotes omitted; italics added).

---

[4] A "criminal trespass" is a misdemeanor, not a felony. ROA.176-77, 180 (testimony of Officer Rivera); *see* Tex. Penal Code § 30.05(a) (2024).

Then, addressing whether the stop and subsequent frisk of Mr. Flores violated the Fourth Amendment, the court wrote:

> Officer Rivera had probable cause to arrest Flores for criminal trespassing, justifying her initial stop. She received information from dispatch that: (1) Flores was seen by his brother on a property for which he had received a criminal trespass warning; (2) he was attempting to open the door of the residence; (3) video captured Flores on the property attempting to open the door; (4) he was wearing black shorts and a white t-shirt; and (5) he was headed [w]est from the property when he left. Through her independent investigation, Officer Rivera confirmed the identity of Flores, corroborated that he was in fact wearing black shorts and a white t-shirt, and located him headed [w]est from the allegedly trespassed property. Moreover, Officer Rivera testified that she was aware that Flores had signed the criminal trespass warning issued against him. *These facts and circumstances warranted a belief that Flores had just committed a criminal trespass, and therefore authorized Officer Rivera to arrest him, even without a warrant.*
>
> *Because Officer Rivera had probable cause to arrest Flores for criminal trespassing, her subsequent frisk of Defendant did not run afoul of the Fourth Amendment.* That is true even though the frisk occurred before Officer Rivera effectuated the arrest because the fruits of the frisk—the firearm and ammunition—did not supply the probable cause to arrest Flores for criminal trespass.

ROA.78-79 (internal citations and footnote omitted; italics added).

The court observed, in a footnote, that "Officer Rivera gave testimony [on direct examination] suggesting [Mr. Flores] might be armed and dangerous,"[5] but

---

[5] Officer Rivera testified that she had previously been told, by other officers, that Mr. Flores "had violent tendencies against police officers" and that she should "use caution because, typically, he was not fond of officers." ROA.147, 198. But she did *not* say that she had been told that Mr. Flores typically carries weapons and thus should be considered armed and dangerous.

that "on cross, when asked whether there was any information given to her by dispatch to suggest [Mr. Flores] was armed and dangerous, Officer Rivera testified there was not and agreed that [Mr. Flores] did not appear violent as she approached him." ROA.75; *see* ROA.177-79, 183 (hearing transcript). The court avoided resolving whether there was a reasonable suspicion of dangerousness, stating: "Because Officer River[a] had probable cause to arrest [Mr. Flores] for criminal trespass and search him incident to that arrest, the Court need not determine whether . . . there was reasonable suspicion that [Mr. Flores] was armed and dangerous." ROA.72.

Implicitly, the court also found it unnecessary to decide whether Mr. Flores *consented* to the search, which the court viewed as "the weaker of the two" justifications offered by the government. ROA.216. The court held only that "Officer Rivera's stop and subsequent frisk of Flores comported with the demands of the Fourth Amendment because both occurred after she had probable cause to arrest Flores for criminal trespass." ROA.79.

On November 12, 2025, Mr. Flores agreed to waive his right to a jury trial and proceed to a stipulated bench trial. *See* ROA.89 (waiver of jury trial); ROA.218-25 (bench trial transcript). The parties' signed "Stipulation of Fact," which was admitted as evidence, *see* ROA.220-21, stated that "[s]hould the following witnesses have testified, they would have testified" to the following:

**Aransas Pass Police Officer Kassandra Rivera:** On November 14, 2024, at approximately 5:22 pm, Aransas Pass Police received a call regarding a criminal trespass. The offender was identified as Marcus Flores, who had been issued a criminal trespass warning from the property two days before, on November 12, 2024. A description of his clothing was also given. Officer Rivera responded to the area of the call and located an individual she knew to be Marcus Flores, wearing the clothing described, approximately two to three blocks from the location of the call.

Officer Rivera approached Flores, who was on foot, and initiated a pat-down of his person. She immediately discovered numerous rounds of ammunition in the right pocket of his shorts. At that point Officer Rivera detained Flores in handcuffs and continued the pat-down, finding a firearm in his left pocket.

Officer Rivera confirmed that Flores had a prior felony conviction and arrested him as a previously convicted felon in possession of a firearm. The firearm and ammunition were taken as evidence.

**ATF Special Agent David Morris:** Special Agent David Morris from the Bureau of Alcohol, Tobacco, Firearms and Explosives adopted the case for federal prosecution. On December 11, 2024, he examined the firearm recovered from Flores and identified it as a Walther P22, .22LR caliber pistol, bearing serial number N054822. Special Agent Morris also identified the ammunition as sixty-four (64) rounds of .22LR ammunition, bearing headstamp W. After examination, Special Agent Morris determined the firearm to be properly classified as a firearm according to [18 U.S.C. §] 921(a)(3).

As part of his investigation, Special Agent Morris determined the firearm had traveled in interstate commerce. Specifically, the firearm was manufactured in Germany and was imported into the United States in the state of Massachusetts. Likewise, the ammunition had also traveled in interstate commerce; it was manufactured in the state of Illinois.

Special Agent Morris confirmed Flores's criminal history, specifically that he had been previously convicted of the felony offense of Aggravated Robbery in the 36th District Court, Aransas County, Texas,

> in cause number A-14-5155-2-CR. Flores was convicted and sentenced to ten years in custody of the Texas Department of Criminal Justice on November 6, 20[14].

ROA.90-92 (formatting altered).

Based on this evidence, the court found Mr. Flores guilty of committing the offense charged in the indictment. ROA.93-94 (order). On the interstate-commerce element, the court simply found: "The firearm and ammunition possessed traveled in interstate commerce; that is, before [Mr. Flores] possessed the firearm and ammunition, it had traveled at some time from one state to another." ROA.94 (order).

The court ordered the probation officer to prepare a presentence report ("PSR") to assist the court in sentencing Mr. Flores. ROA.95. The PSR prepared by the probation officer used the 2025 edition of the United States Sentencing Guidelines ("USSG") to calculate the imprisonment range as 27 to 33 months, based on a total offense level of 17 and a criminal history category of II. ROA.365 (PSR ¶ 43); *see* USSG Ch. 5, Pt. A (Sentencing Table).

The total offense level was calculated as follows. The PSR began with a base offense level of 20 under USSG § 2K2.1(a)(4)(A), because Mr. Flores committed the instant offense after sustaining a felony conviction of a "crime of violence," *i.e.*, Texas aggravated robbery. *See* ROA.359 (PSR ¶ 12) ("In this case, the defendant pled guilty on November 6, 2014, in the 36th District Court of Aransas County, Texas, to the crime of violence felony offense of Aggravated Robbery, Docket No.:

A-14-5155-2-CR, and was sentenced to 10 years custody on the same date."); ROA.349-54 (prior conviction records). The PSR then subtracted three levels under USSG § 3E1.1(a) and (b) for Mr. Flores's timely acceptance of responsibility, resulting in a total offense level of 17. ROA.157 (PSR ¶¶ 40-41).

As for criminal history, the PSR assessed three points under USSG § 4A1.1(a) for the 10-year sentence that Mr. Flores received for the 2014 Texas aggravated robbery conviction, *see* ROA.360-61 (PSR ¶ 23), which resulted in a criminal history category of II. ROA.361 (PSR ¶ 24).

Mr. Flores objected in writing to the PSR's calculation of the base offense level, arguing that his Texas aggravated robbery was an offense that did not qualify as a crime of violence under USSG §§ 2K2.1(a)(4) and 4B1.2(a) and (e)(3) because that offense could be committed recklessly. *See* ROA.338-42. He contended that "[t]he [total] offense level should be 12" (applying a base level of 14 under USSG § 2K2.1(a)(6)(A) and a two-level reduction under USSG § 3E1.1(a)), which, combined with a criminal history category of II, yields an advisory Guidelines range of 12 to 18 months' imprisonment. ROA.343; *see* USSG Ch. 5, Pt. A (Sentencing Table). In an addendum to the PSR, the probation officer responded that Texas aggravated robbery "categorically qualif[ies] as a 'crime of violence' pursuant to [USSG] § 4B1.2(a)(2)." ROA.373.

At sentencing on March 11, 2026, defense counsel stated Mr. Flores's objection to the PSR's application of § 2K2.1(a)(4)'s base offense level and then discussed the issue at length with the court. *See* ROA.229-40. The court ultimately overruled the objection, stating: "The Court believes the intent of the Sentencing Guidelines is clear to include this type of offense as a crime of violence, and therefore, will overrule the objection. I note that there is no waiver of appeal. So, I anticipate that will give the Fifth Circuit a chance to weigh in on this particular ruling." ROA.240.

The court then confirmed with the parties that the advisory Guidelines range of imprisonment, based on a total offense level of 17 and criminal history category of II, was 27 to 33 months. ROA.240. The government recommended a within-Guidelines sentence of 30 months' imprisonment ("a mid-point of the Guidelines sentence"), in view of Mr. Flores's history and characteristics. ROA.241-42. Defense counsel, in turn, recommended a sentence at "the low end of the Guidelines" in view of Mr. Flores's young age and "difficult past," his good behavior while in custody, and other factors. ROA.245-46.

Mr. Flores, in his allocution, apologized to the court for his conduct and said, "[W]hen I get to the BOP, I'm planning to do some classes that'll help me in the world." ROA.247. He also told the court that he "plan[s] on staying away from firearms" in the future. ROA.248.

The court sentenced Mr. Flores to a 27-month term of imprisonment ("the bottom of the Guidelines") and a two-year term of supervised release. ROA.248. The court stated that it had "considered the Advisory Guidelines and the sentencing factors set forth in 18 [U.S.C. §] 3553" and had found that "the sentence imposed is sufficient but not greater than necessary to impose an appropriate sentence." ROA.249.

Before the hearing concluded, the prosecutor said, "Your Honor, if I may, and I've been asked to ask this question by our Appellate Division, if the Court would make a statement that under the [Section] 3553 factors . . . the sentence would be the same even outside of the consideration on [*sic*] the crime of violence objection?" ROA.250. The court responded, "I will let the record stand as it is." ROA.250. The court added, "But that's clever [of you] to ask me to do that." ROA.250. It then stated: "We're talking a lot about appeals because the issue, the legal issue, that we spent so much time talking about [today] is . . .  an unsettled one in this Circuit. And so, the Court of Appeals may shed some light, and that could [be] to your benefit . . . if they decide to overrule me, which is their right to do." ROA.250.

On March 12, 2026, Mr. Flores timely filed his notice of appeal. ROA.101-02. This appeal followed.

## SUMMARY OF THE ARGUMENT

In Issue One, Mr. Flores argues that the district court, at sentencing, reversibly erred by applying a base offense level of 20 under USSG § 2K2.1(a)(4)(A) based on its determination that his prior Texas aggravated robbery offense qualified as a "crime of violence" under USSG § 4B1.2(a). Applying the categorical approach, Texas aggravated robbery does not qualify as a crime of violence under either the force clause or the enumerated-offense clause of § 4B1.2(a): injury-robbery and threat-robbery are indivisible means of committing a single offense, and the least culpable conduct the statute criminalizes—recklessly causing bodily injury in immediate flight after a theft—neither requires the use of physical force nor falls within the Guidelines' post-2023 definition of robbery, which (like the materially identical Hobbs Act definition) excludes *reckless* conduct. The government cannot show that this error was harmless. This Court should vacate Mr. Flores's sentence and remand for resentencing.

In Issue Two, Mr. Flores argues, on plain-error review, that § 922(g)(1) is unconstitutional as applied to him because it allows a conviction based only on the firearm's manufacture outside of, and its subsequent importation to, the state in which it was possessed, without regard to any involvement by him in such transportation or in the economic activity associated with the purchase or sale of the firearm. Mr. Flores recognizes that this argument is foreclosed by Circuit precedent,

and thus he raises it only to preserve it for further review.

In Issue Three, Mr. Flores argues that Officer Rivera's warrantless arrest of him for criminal trespass—a misdemeanor she did not personally witness—was unlawful, and that the firearm and ammunition recovered from the search that followed should have been suppressed as fruit of that unlawful arrest. A search incident to arrest is valid only if the underlying arrest is lawful, and the Fourth Amendment incorporates the founding-era common-law rule that officers lack authority to arrest without a warrant for a misdemeanor not committed in their presence. This is a rule that applies with even greater force here because criminal trespass was not a crime at common law at all, absent a breach of the peace. Mr. Flores acknowledges that this argument is foreclosed by this Circuit's precedent holding that the Fourth Amendment imposes no in-the-presence requirement, *see Fields v. City of South Houston*, 922 F.2d 1183, 1189 (5th Cir. 1991), and he raises it only to preserve it for further review in light of Justice Sotomayor's statement respecting the denial of certiorari in *Grandia Gonzalez v. United States*, 604 U.S. ___, 145 S. Ct. 529 (2025), questioning whether that precedent remains sound.

Neither of the government's alternative theories below would save the search: the *Terry* theory fails on this record, and the consent theory cannot be resolved on this record at all. If this Court finds the arrest unlawful, it should not affirm on either unaddressed theory.

# ARGUMENT

**ISSUE ONE RESTATED**: The district court, at sentencing, reversibly erred by applying a base offense level of 20 under USSG § 2K2.1(a)(4)(A), when Mr. Flores's prior Texas aggravated robbery was an offense that could be committed *recklessly* and thus did not qualify as a crime of violence under USSG § 4B1.2(a)'s force clause or enumerated offense clause.

## A. Standard of review.

This Court conducts *de novo* review of the characterization of a prior conviction as a crime of violence under the Sentencing Guidelines. *See United States v. Calderon-Peña*, 383 F.3d 254, 256 (5th Cir. 2004) (*en banc*) (per curiam), *overruled in part on other grounds by United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018).

## B. The district court mischaracterized Mr. Flores's prior Texas aggravated robbery offense as a crime of violence.

The district court mischaracterized Mr. Flores's prior Texas aggravated robbery offense as a crime of violence and therefore erred in applying a base offense level of 20 under USSG § 2K2.1(a)(4)(A). Under the categorical approach, Mr. Flores's prior Texas aggravated robbery did not qualify as a crime of violence because it is an offense that could be committed recklessly.

1. <u>Legal framework: USSG §§ 2K2.1(a)(4)(A) and 4B1.2(a) and (e), and the categorical approach.</u>

Under USSG § 2K2.1, a base offense level of 20 applies if "the defendant committed any part of the instant offense subsequent to sustaining one felony

conviction of either a *crime of violence* or a controlled substance offense[.]" USSG § 2K2.1(a)(4)(A) (italics added). "'Crime of violence' has the meaning given that term in [USSG] § 4B1.2(a) and Application Note 1 of the Commentary to [USSG] § 4B1.2." USSG § 2K2.1, comment. (n.1).

USSG § 4B1.2, in turn, defines the phrase "crime of violence" as follows:

> (a) Crime of Violence.—The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, *robbery*, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

USSG § 4B1.2(a) (italics added); *see also* USSG § 4B1.1, comment. (n.1). Section (a)(1) is referred to as the "force clause," and section (a)(2) as the "enumerated offense clause." *See, e.g.*, *United States v. Garner*, 28 F.4th 678, 681 (5th Cir. 2022).

Until November 1, 2023, the Guidelines did not provide any definition of robbery. Since then, however, the Guidelines have defined robbery as follows:

> "***Robbery***" is the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member

> of his family or of anyone in his company at the time of the taking or obtaining. The phrase "actual or threatened force" refers to force that is sufficient to overcome a victim's resistance.

USSG § 4B1.2(e)(3) (bolded italics in original); *see also* USSG App. C., amend. 822, https://www.ussc.gov/ guidelines/amendment/822.

To determine if a conviction qualifies as a crime of violence under either the force clause or the enumerated offense clause, this Court applies the categorical approach, looking at the elements of the statute of conviction and not the specific facts of the offense. *See United States v. Johnson*, 880 F.3d 226, 234 (5th Cir. 2018); *see also Taylor v. United States*, 495 U.S. 575, 602 (1990) (setting forth the categorical approach); USSG App. C, amend. 798, https://www.ussc.gov/ guidelines/amendment/798 (reaffirming application of the categorical approach to § 4B1.2). The categorical approach requires courts to "'look only to the statutory definitions'—*i.e.*, the elements—of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.'" *United States v. Moore*, 71 F.4th 392, 394-95 (5th Cir. 2023) (italics in original) (quoting *Descamps v. United States*, 570 U.S. 254, 261 (2013)). Courts must "presume that the state conviction 'rested upon . . . the least of th[e] acts' criminalized by the statute, and then . . . determine whether that conduct would fall within the federal definition of the crime." *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 389 (2017) (citing *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013); *Johnson v. United States*, 559 U.S. 133, 137 (2010)). If the

statute "criminalizes a greater swath of conduct than the elements of the relevant [Guidelines] offense," then a "conviction under that statute does not qualify" as a crime of violence under the Guidelines. *United States v. Tanksley*, 848 F.3d 347, 352 (5th Cir.), *supplemented*, 854 F.3d 284 (5th Cir. 2017) (internal quotation marks omitted) (quoting *United States v. Hinkle*, 832 F.3d 569, 576 (5th Cir. 2016)).

In certain circumstances, courts are permitted to employ the modified categorical approach, which entails looking "to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *United States v. Rodriguez-Flores*, 25 F.4th 385, 388 (5th Cir. 2022) (quoting *Mathis v. United States*, 579 U.S. 500, 505-06 (2016)). However, the modified categorical approach has "no role to play" when the alternatives in the prior conviction statute are indivisible means, rather than divisible elements. *United States v. Montiel-Cortes*, 849 F.3d 221, 225 (5th Cir. 2017) (quoting *Descamps*, 570 U.S. at 264). When a statute "sets out alternative means" of committing an offense, "rather than alternative elements," courts do not apply the modified categorical approach and cannot "examin[e] the state court documents to determine how, precisely, [the defendant] violated [the state statute]." *Id.* (italics in original). Instead, courts must determine whether the statute, "as an indivisible whole, categorically qualifies as a crime of violence." *Id.*

As the Supreme Court explained in *Mathis*, sometimes an "alternatively phrased law" does not list "multiple elements disjunctively, but instead . . . enumerates various factual means of committing a single element." 579 U.S. at 506 (citing generally *Schad v. Arizona*, 501 U.S. 624, 636 (1991) (plurality opinion), for the proposition that "[l]egislatures frequently enumerate alternative means of committing a crime without intending to define separate elements or separate crimes"). For example, a statute might require "use of a 'deadly weapon' as an element of a crime and further provide[] that the use of a 'knife, gun, bat, or similar weapon' would all qualify." *Id.* (citations omitted).

> Because that kind of list merely specifies diverse means of satisfying a single element of a single crime—or otherwise said, spells out various factual ways of committing some component of the offense—a jury need not find (or a defendant admit) any particular item: A jury could convict even if some jurors concluded that the defendant used a knife while others concluded he used a gun, so long as all agreed that the defendant used a "deadly weapon."

*Id.* (cleaned up). The means-versus-elements question "is easy" when "a state court decision definitively answers the question" of whether a jury must agree as to the statute's alternatives. *Id.* at 517-18.

2. A Texas aggravated robbery is not an offense that qualifies as a crime of violence under § 4B1.2(a)'s force clause or enumerated offense clause.

Applying the categorical approach, a Texas aggravated robbery is not an offense that qualifies as a crime of violence under either the force clause or the enumerated offense clause of USSG § 4B1.2(a). As explained below, the injury and threat variations of Texas robbery are indivisible means, and so the modified categorical approach has no role to play in this case. The least culpable way to commit Texas robbery—recklessly causing bodily injury in immediate flight after committing a theft—does not have force as an element and encompasses a greater swath of conduct than the new Guidelines definition of robbery. Accordingly, the district court clearly and obviously erred in its "crime of violence" characterization.

Texas has defined simple robbery, since September 1, 1994, as follows:

> (a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:
>
> (1) intentionally, knowingly, or recklessly causes bodily injury to another; or
>
> (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

Tex. Penal Code § 29.02(a). The type of robbery in § 29.02(a)(1) is referred to as injury-robbery, and the type in § 29.02(a)(2) as threat-robbery. Texas defines "in the course of committing theft" as "conduct that occurs in an attempt to commit, during

the commission, or in immediate flight after the attempt or commission of theft." Tex. Penal Code § 29.01(1).

Texas defines "aggravated robbery" as a simple robbery plus an aggravating factor:

> (a) A person commits an offense if he commits robbery as defined in Section 29.02, and he:
>
> (1) causes serious bodily injury to another;
>
> (2) uses or exhibits a deadly weapon; or
>
> (3) causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the other person is:
>
> (A) 65 years of age or older; or
>
> (B) a disabled person.

Tex. Penal Code § 29.03(a).

It is now clear that injury-robbery and threat-robbery are indivisible means of committing a single offense. In *United States v. Garrett*, 24 F.4th 485 (5th Cir. 2022), this Court had held that injury-robbery and threat-robbery were divisible. *Id.* at 491. But in *United States v. Rose*, 127 F.4th 619 (5th Cir. 2025), this Court recognized that "the Texas Court of Criminal Appeals—the highest criminal court in Texas—issued its decision in *Floyd v. State*, 714 S.W.3d 9 (Tex. Crim. App. Nov. 13, 2024), which unequivocally abrogated *Garrett*." *Rose*, 127 F.4th at 620 (cleaned up).

In *Floyd*, the defendant argued that the jury should have been instructed that it had to be unanimous as to whether the robbery was committed by threat or injury. 714 S.W.3d at 11. The Texas Court of Criminal Appeals disagreed, holding that a jury does not "have to unanimously agree on whether the person committed injury-robbery or threat-robbery." *Id.* at 10. Rather, the Court held that injury-robbery and threat-robbery "were simply alternative methods of committing the same robbery offense." *Id.* at 15. Because injury-robbery and threat-robbery are means of committing a single offense, they are indivisible. *See, e.g.*, *Mathis*, 579 U.S. at 517-18 (explaining that divisibility's "elements or means" inquiry "is easy" when "a state court decision definitively answers the question" of whether a jury must agree as to the statute's alternatives).

Since injury-robbery and threat-robbery are indivisible, the modified categorical approach has no role to play in this case. *See, e.g.*, *Mathis*, 579 U.S. at 517-18; *Montiel-Cortes*, 849 F.3d at 225. The Court must, therefore, look to the least culpable of the acts criminalized under the statute and then "determine whether that conduct would fall within the federal definition of the crime." *Esquivel-Quintana*, 581 U.S. at 389. Here, the least culpable conduct is recklessly causing injury in immediate flight after committing theft. *See, e.g.*, *Craver v. State*, No. 02-14-00076-CR, 2015 WL 3918057, at *1-*5, *7 (Tex. App.—Fort Worth June 25, 2015, pet. ref'd) (upholding a robbery conviction when the defendant stole merchandise from

a mall department store by hiding it in his bag and then *recklessly*—the only mens rea alleged in the indictment—caused injury to a woman walking in the mall for physical fitness when he attempted to flee the scene by jumping over a second-floor railing and landing on her). That conduct does not qualify under the force clause because the Supreme Court has held that offenses criminalizing mere reckless conduct do not have as an element the use of physical force against the person of another. *Borden v. United States*, 593 U.S. 420, 429 (2021); *United States v. Burris*, 856 Fed. Appx. 547, 547 (5th Cir. 2021) (unpublished) (recognizing that, under *Borden*, Texas injury-robbery does not satisfy the force clause "because it could be committed simply by recklessly causing another to suffer injury during a theft"); *United States v. Ybarra*, No. 20-10520, 2021 WL 3276471, at *1 (5th Cir. July 30, 2021) (unpublished) (same).[6]

That leaves the new Guidelines definition of robbery in the enumerated offense clause. Although this Court held in *United States v. Santiesteban-Hernandez*, 469 F.3d 376 (5th Cir. 2006), that Texas robbery meets the generic definition of robbery, that decision predated, and has been superseded by, the new Guidelines definition of robbery. In *United States v. Wickware*, 143 F.4th 670 (5th

---

[6] Although *Rose* and *Borden* arose in the context of the Armed Career Criminal Act ("ACCA"), it is well established that ACCA precedent applies to the Guidelines in this context. *See, e.g.*, *United States v. Bates*, 24 F.4th 1017, 1018-19 (5th Cir. 2022).

Cir. 2025), this Court recognized that *Santiesteban-Hernandez* no longer controlled "due to the intervening amendment of the Guidelines." *Id.* at 674.

Unbound by pre-amendment precedent, the categorical approach analysis requires the Court to compare the new Guidelines definition to the least culpable conduct criminalized by the state statute. *See, e.g.*, *Esquivel-Quintana*, 581 U.S. at 389; *Tanksley*, 848 F.3d at 352. That comparison leads to one conclusion: By including *recklessly* causing injury in immediate flight after committing theft, Texas's robbery statute encompasses a "greater swath of conduct," *Tanksley*, 848 F.3d at 352, than the new Guidelines definition of robbery.

As noted above, the Guidelines now define robbery as follows:

> "***Robbery***" is the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining. The phrase "actual or threatened force" refers to force that is sufficient to overcome a victim's resistance.

USSG § 4B1.2(e)(3). Except for the last sentence defining "actual or threatened force," the Guidelines definition matches exactly the Hobbs Act's definition of robbery:

> The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member

> of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1). Numerous courts have interpreted Hobbs Act robbery as *excluding* acts committed recklessly. *See United States v. Ivey*, 60 F.4th 99, 116-17 (4th Cir. 2023) (agreeing with several other circuits that "Hobbs Act robbery cannot be committed recklessly," and therefore holding that Hobbs Act robbery still qualifies as a predicate under 18 U.S.C. § 924(c)'s force clause after *Borden*) (citing *United States v. Dominguez*, 954 F.3d 1251, 1261 (9th Cir. 2020), *overruled on other grounds by United States v. Taylor*, 596 U.S. 845 (2022); *United States v. García-Ortiz*, 904 F.3d 102, 108-09 (1st Cir. 2018); *United States v. Gray*, 260 F.3d 1267, 1283 (11th Cir. 2001)); *see also United States v. Barrett*, 102 F.4th 60, 78-79 (2d Cir. 2024) (irrelevant subsequent history omitted); *United States v. Stevens*, 70 F.4th 653, 659-60 (3d Cir. 2023). Although this Court has not been as explicit, the Court has continued to hold, even after *Borden*, that Hobbs Act robbery qualifies as a "crime of violence under the [force] clause," which means Hobbs Act robbery cannot include recklessly committed conduct. *See United States v. Hill*, 63 F.4th 335, 363 (5th Cir. 2023).

But in Texas, a person commits a robbery when he steals merchandise from a mall department store by hiding it in his bag and then *recklessly* causes injury when attempting to flee the scene. *Craver*, 2015 WL 3918057, at *1-*5, *7. By including

the mens rea of recklessness, Texas robbery includes conduct that falls outside of the new Guidelines definition.[7]

Mr. Flores anticipates that the government may argue that the new Guidelines definition of robbery should be interpreted differently than Hobbs Act robbery, despite the identical language. The government has taken the opposite position before the Sentencing Commission. In a February 2025 letter, the Department of Justice urged the Commission to amend the Guidelines robbery definition so that it would include state statutes covering reckless conduct. The Department of Justice argued that this amendment was necessary because "[t]he current definition, like that in the Hobbs Act, requires intentional conduct." Letter from the U.S. Department of Justice, Criminal Division, Appellate Section to the Honorable Carlton W. Reeves, Chair, U.S. Sentencing Commission (Feb. 3, 2025) at 10-11, *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20250212/DOJ.pdf.

[7] Although the Court in *Wickware* held that Texas robbery qualified as a robbery under the new Guidelines definition, the Court expressly left open and did not "address whether the Guidelines' definition of robbery includes a narrower mens rea than the Texas Penal Code requires." *Wickware*, 143 F.4th at 675 n.2; *see also United States v. Goines*, No. 25-10569, 2026 WL 311948, at *1 (5th Cir. Feb. 5, 2026) (unpublished) (recognizing that "the *Wickware* decision did not address [the] argument that the mens rea of the Texas robbery statute is broader than that of the enumerated offense of robbery," but concluding that the argument failed on plain-error review because the appellant had not identified an error that was "clear or obvious"); *United States v. Goodspeed*, No. 25-10209, 2025 WL 2682520, at *1 (5th Cir. Sept. 19, 2025) (unpublished) (same).

The Sentencing Commission purposefully adopted text that mirrored Hobbs Act robbery when enacting the 2023 amendment. *See* USSG App. C, amend. 822, https://www.ussc.gov/guidelines/amendment/822 (Reason for Amendment). The Hobbs Act and Guidelines definitions of robbery should be interpreted the same way because they "share identical operative language." *Cf. Garner*, 28 F.4th at 882 ("Though *Borden* and [*Leocal v. Ashcroft*, 543 U.S. 1 (2004),] interpreted the force clauses in the Armed Career Criminal Act and the Immigration and Nationality Act respectively, those force clauses share identical operative language—'against another'—with the force clause in the Sentencing Guidelines. We have thus interpreted [USSG] § 4B1.2(a)(1)'s force clause to also exclude crimes that can be committed negligently or recklessly from the definition of 'crime of violence.'").

In sum, the district court erred by applying a base offense level of 20 under USSG § 2K2.1(a)(4)(A) when Mr. Flores's prior Texas aggravated robbery was an offense that could be committed *recklessly* and thus did not qualify as a crime of violence under USSG § 4B1.2(a)'s force clause or its enumerated offense clause.

**C. The government cannot demonstrate that this error was harmless.**

This Court has said that there are "two ways" for the government to demonstrate harmless error when the wrong Guidelines range has been employed. *United States v. Guzman-Rendon*, 864 F.3d 409, 411 (5th Cir. 2017). The first way entails showing "that the district court considered both ranges (the one now found

incorrect and the one now deemed correct) and explained that it would give the same sentence either way." *Id.* The second way applies in the absence of record evidence showing the district court considered the correctly calculated Guidelines range, and requires "compelling [proof] that the district court would have imposed a sentence outside the properly calculated sentencing range for the same reasons it provided at the sentencing hearing" and "that the sentence the district court imposed was not influenced in any way by the erroneous Guidelines calculation." *United States v. Martinez-Romero*, 817 F.3d 917, 924 (5th Cir. 2016) (citing *United States v. Ibarra-Luna*, 628 F.3d 712, 718-19 (5th Cir. 2010)); *see also Guzman-Rendon*, 864 F.3d at 411 ("[T]he other way applies even if the correct guidelines range was not considered, and requires that '[the government] convincingly demonstrate' the district court would have imposed the same sentence for the same reasons given at the prior sentencing.").

The government cannot make either showing here. Had the district court not erroneously applied a base offense level of 20 under USSG § 2K2.1(a)(4)(A), a base offense level of 14 would have applied. *See* USSG § 2K2.1(a)(6)(A). And, after a two-level reduction under USSG § 3E1.1(a), the total offense level would have been 12 (rather than 17). A total offense level of 12, combined with a criminal history category of II, yields an advisory Guidelines range of 12 to 18 months' imprisonment (rather than 27 to 33 months). ROA.343; *see* USSG Ch. 5, Pt. A (Sentencing Table).

The district court anchored the sentence to the erroneous higher range, imposing a sentence that corresponded precisely to the low end of that range (*i.e.*, 27 months). ROA.248; *see also* ROA.401 (statement of reasons). The court said that it was sentencing Mr. Flores "to the bottom of the Guidelines." ROA.248. Thus, even though the court also said that it had considered "the sentencing factors set forth in 18 [U.S.C. §] 3553," ROA.249, the government cannot show that the error was harmless for that reason, as it cannot demonstrate that the 27-month sentence was "not influenced in any way by the erroneous Guidelines calculation." *Martinez-Romero*, 817 F.3d at 924; *see also United States v. Mecham*, 950 F.3d 257, 268 (5th Cir. 2020) ("[W]ithout more, a court's commonplace consideration of the statutory sentencing factors does not render a sentencing error harmless. . . . When the court imposes a sentence at the low end of the Guidelines, making it more likely the advisory range had an anchoring effect, a court's mere consideration of the section 3553(a) factors is an even weaker basis for finding harmlessness.").

Moreover, unlike in *Guzman-Rendon*, there is no evidence that the district court actually considered the range "now deemed correct" (*i.e.*, 12 to 18 months), much less compared that range to "the one now found incorrect." *Guzman-Rendon*, 864 F.3d at 411. And, even if the court was aware of both sentencing ranges, "the court never explained that it would impose the same [27]-month prison term either way." *United States v. Martinez-Contreras*, 709 Fed. Appx. 297, 298 (5th Cir. 2018)

(unpublished) (citing *Guzman-Rendon*, 864 F.3d at 411). The government urged the court to "make a statement that under the [Section] 3553 factors . . . the sentence would be the same even outside of the consideration on [*sic*] the crime of violence objection," but the court declined. ROA.250. This Court should, therefore, vacate Mr. Flores's sentence and remand for resentencing under the correct Guidelines range.

**ISSUE TWO RESTATED:** 18 U.S.C. § 922(g)(1) is unconstitutional as applied to Mr. Flores because it allowed a conviction based only on the firearm's manufacture outside of, and its subsequent importation to, the state in which it was possessed, without regard to any involvement by Mr. Flores in such transportation or in the economic activity associated with the purchase or sale of the firearm. (Foreclosed issue.)

**A. Standard of review.**

The Court reviews this issue, raised for the first time on appeal, using the plain-error standard of review. *United States v. Toure*, 965 F.3d 393, 399 (5th Cir. 2020).

Mr. Flores acknowledges, as he must, that this issue is foreclosed. *See United States v. Seekins*, No. 21-10556, 2022 WL 3644185, at *2 (5th Cir.) (unpublished), *reh'g en banc denied*, 52 F.4th 988 (5th Cir. 2022). He raises the issue here only to preserve it for further review.

**B. 18 U.S.C. § 922(g)(1) is unconstitutional as applied to Mr. Flores, as it allowed a conviction based only on the firearm's and ammunition's manufacture outside of, and subsequent importation to, the state in which they were possessed.**

Article I, § 8 of the United States Constitution provides: "Congress shall have power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes . . . ." In *United States v. Lopez*, 514 U.S. 549 (1995), the Supreme Court established the test for the scope of Congress's power to regulate activities that "affect" interstate commerce: "We conclude, consistent with the great weight of our case law, that the proper test requires an analysis of whether

the regulated activity 'substantially affects' interstate commerce." *Lopez*, 514 U.S. at 559. *Lopez* seemed to, but did not expressly, overrule the more permissive test for federal regulation of gun possession articulated in *Scarborough v. United States*, 431 U.S. 563 (1977), which required only the "minimal nexus that the firearm have been, at some time, in interstate commerce." *Id.* at 575. A fair reading of *Scarborough* suggests that the case was concerned solely with statutory interpretation and did not purport to resolve any constitutional issues. *See Seekins*, 52 F.4th at 991 (Ho, J., dissenting from denial of rehearing *en banc*).

This Court has adhered to the view that *Scarborough*'s "minimal nexus" is sufficient both to prove guilt under 18 U.S.C. § 922 and to bring any subsequent act of firearm possession within Congress's power to regulate. *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013).

Members of the Supreme Court and judges on lower courts have acknowledged the irreconcilability of *Lopez* and a constitutional reading of *Scarborough*. *See Alderman v. United States*, 131 S. Ct. 700, 702 (2011) (Thomas, J., dissenting from denial of certiorari) ("*Scarborough*, as the lower courts have read it, cannot be reconciled with *Lopez*."); *see also United States v. Hill*, 927 F.3d 188, 215 n.10 (4th Cir. 2019) (Agee, J., dissenting) ("While some tension exists between *Scarborough* and the Supreme Court's decision in *Lopez*, the Supreme Court has not granted certiorari on a case that would provide further guidance."); *United States v. Kuban*, 94 F.3d 971, 977

(5th Cir. 1996) (DeMoss, J., dissenting) ("[T]he precise holding in *Scarborough* is in fundamental and irreconcilable conflict with the rationale of" *Lopez.*).

Justice Thomas's concurrence in *United States v. Hemani*, 608 U.S. ___, 146 S. Ct. 1677, 1694 (2026) (Thomas, J., concurring), reinforces these points. As an original matter, he explained, the Commerce Clause authorizes Congress only to regulate the buying and selling of goods trafficked across state lines, not "activities wholly separated from business, such as gun possession." *Hemani*, 146 S. Ct. at 1695 (quoting *Lopez*, 514 U.S. at 599 (Thomas, J., concurring)). And under this Court's modern doctrine, § 922(g) fits none of *Lopez*'s three categories: it does not regulate the channels of commerce, since it reaches possession "within a State long after any use of those channels"; it does not protect persons or things in commerce, since it requires no showing that the possession poses any risk to interstate transactions; and mere possession is not "economic activity" that substantially affects commerce. *Id.* at 1695-96 (quoting *United States v. Morrison*, 529 U.S. 598, 613 (2000)).

Justice Thomas also rejected the "jurisdictional hook" rationale this Court has relied on: that a firearm's past interstate travel alone satisfies the commerce requirement. Treating that hook as dispositive, he explained, "could very well remove any limit on the commerce power," because it does not "ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Hemani*, 146 S. Ct. at 1697 (quoting *Lopez*, 514 U.S. at 561). Nor does

*Gonzales v. Raich*, 545 U.S. 1 (2005), save § 922(g), as it is a regulation to further public safety by preventing local gun crime and is not part of a larger regulation of economic activity. *Id.* at 1696 n.*. Justice Thomas noted that he is not alone: decades of lower-court opinions by various jurists agree. *See id.* at 1696 (citing *United States v. Chesney*, 86 F.3d 564, 574-75 (6th Cir. 1996) (Batchelder, J., concurring); *United States v. Kuban*, 94 F.3d 971, 977 (5th Cir. 1996) (DeMoss, J., dissenting); *United States v. Storey*, 571 F. Supp. 3d 1296, 1298 (M.D. Fla. 2021) (Mizelle, J.); *Seekins*, at 991 (Ho, J., dissenting from denial of rehearing *en banc*); *United States v. Bonner*, 159 F.4th 338, 343 (5th Cir. 2025) (Willett, J., concurring); *United States v. Patton*, 451 F.3d 615, 634 (10th Cir. 2006) (McConnell, J.); *United States v. Alderman*, 565 F.3d 641, 648 (9th Cir. 2009) (Paez, J., dissenting); and *United States v. Alderman*, 593 F.3d 1141 (9th Cir. 2010) (O'Scannlain, J., dissenting)).

This debate is no longer confined to dissents. On July 20, 2026, this Court granted rehearing *en banc* in *United States v. Squire*, No. 25-30324, 2026 WL 2089721 (5th Cir.) (per curiam), vacating the panel opinion to consider *en banc* a Commerce Clause challenge to § 922(g)(1). *See id.* at *1. Coming weeks after Justice Thomas's *Hemani* concurrence invited exactly that reconsideration, *Squire* confirms Mr. Flores's argument is very much alive in this Circuit, even if presently foreclosed by panel precedent.

If *Scarborough* is a constitutional decision, then it grants the federal

government unlimited power to regulate the affairs of citizens. *See Alderman*, 131 S. Ct. at 702-03 (Thomas, J., dissenting from denial of certiorari) ("The lower courts' reading of *Scarborough*, by trumping the *Lopez* framework, could very well remove any limit on the commerce power."). Any physical object has almost certainly crossed a state line at some point in the past. To hold that this past travel grants Congress a perpetual right to regulate what someone does or does not do with that object is to eliminate any restrictions on Congress's power. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 557 (2012) (Roberts, C.J.) ("The Commerce Clause is not a general license to regulate an individual from cradle to grave, simply because he will predictably engage in particular transactions.") (hereinafter "*NFIB*").

This unlimited power renders 18 U.S.C. § 922 unconstitutional as applied to someone like Mr. Flores. In *NFIB*, Chief Justice Roberts noted that "[a]s expansive as our cases construing the scope of the commerce power have been, they all have one thing in common: They uniformly describe the power as reaching '*activity*.'" *Id.* at 551 (emphasis added). He reasoned that this limitation of Commerce Clause power to "activities" is a "distinction between doing something and doing nothing [that] would not have been lost on the Framers, who were 'practical statesmen,' not metaphysical philosophers." *Id.* at 555. Four other Justices echoed Chief Justice Roberts' sentiment regarding the Commerce Clause analysis, stating that Congress could only regulate "activity affecting commerce." *NFIB*, 567 U.S. at 658 (Scalia,

J., Kennedy, J., Thomas, J., Alito, J., dissenting).

Here, 18 U.S.C. § 922 did not require the government to prove that Mr. Flores's possession of the gun was an economic activity. This ought to be fatal to the conviction. As explained by *NFIB*, the Commerce Clause permits Congress to regulate only activities, *i.e.*, the active participation in a market. But § 922(g)(1) criminalizes all possession, without reference to economic activity. Accordingly, it sweeps too broadly.

Further, the statute did not require that Mr. Flores be engaged in the relevant market at the time of the regulated conduct. Chief Justice Roberts also noted that Congress cannot regulate a person's activity under the Commerce Clause unless the person affected is "currently engaged" in the relevant market. *NFIB*, 567 U.S. at 556-57. As an illustration, the Chief Justice provided the following example: "An individual who bought a car two years ago and may buy another in the future is not 'active in the car market' in any pertinent sense." *Id.* As such, *NFIB* overrules the longstanding notion that a firearm that has previously and remotely passed through interstate commerce should be considered to affect commerce indefinitely without "concern for when the [initial] nexus with commerce occurred." *Scarborough*, 431 U.S. at 577.

Mr. Flores's case illustrates how this Court's precedent removes any limitation on Congress's commerce power. The firearm and ammunition at issue

were recovered after police officers, suspecting that Mr. Flores had earlier committed the misdemeanor offense of criminal trespass, stopped and frisked him. ROA.74-75, 77-78, 90-91. The only evidence offered to establish the interstate-commerce element of the offense was a special agent's subsequent investigation, which showed that the firearm was manufactured in Germany and imported into the United States in Massachusetts, and that the ammunition was manufactured in Illinois. *See* ROA.90-92. Based solely on the evidence of the firearm's and ammunition's manufacture and importation, the district court found only that "[t]he firearm and ammunition possessed traveled in interstate commerce; that is, before [Mr. Flores] possessed the firearm and ammunition, it had traveled at some time from one state to another." ROA.94 (order). The government offered no proof that Mr. Flores himself had traveled in interstate commerce with the firearm or ammunition, nor any proof that he had purchased either from a vendor participating in interstate commerce.

Accordingly, Mr. Flores was convicted under this statute without evidence that he was "currently engaged" in the gun market at the time of his arrest, and without evidence showing how recently he came to possess the firearm and ammunition. So § 922(g)(1) fails to survive *NFIB*'s Commerce Clause analysis. The statute has been construed to require only that a firearm have traveled in interstate commerce at some previous time. *See Scarborough*, 431 U.S. at 575. If it cannot be

construed to require commercial activity of some kind by the defendant, something more substantial than mere possession of an item that may have crossed state lines years ago, it then contains no jurisdictional element sufficient to bring it within the scope of Congressional power. In the absence of such a jurisdictional element, the Supreme Court has found federal criminal statutes falling substantially outside the Commerce power to be unconstitutional, without pausing to consider whether the particular conduct of the defendant might have affected commerce. *See Lopez*, 514 U.S. at 561; *United States v. Morrison*, 529 U.S. 598, 607 (2000). In other words, without such an element, comparable statutes have been found unconstitutional.

### C. The error may become plain, and, if so, the error also affected Mr. Flores's substantial rights and should be corrected by this Court because it seriously affects the fairness, integrity, and public reputation of the judicial proceedings.

Mr. Flores concedes that his argument was rejected in *Alcantar*, 733 F.3d at 145-46, among other cases, and the error is not "plain" under current case law. But the error may become plain if the Court issues a decision favorable to the appellant in another pending case. *See Henderson v. United States*, 568 U.S. 266, 274 (2013) (plainness of error is judged at time of appeal). This is no longer hypothetical: this Court has granted rehearing *en banc* in *Squire*, 2026 WL 2089721 (5th Cir.), to resolve the very Commerce Clause question raised here. *See supra* Part B.

If there is error that becomes plain, then plain-error review's third and fourth prongs would also be satisfied. Mr. Flores was found guilty based solely on evidence

that the firearm and ammunition had, at some point, crossed state lines, not on any finding that he was currently engaged in interstate commerce. He can therefore demonstrate the "reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016) (internal quotation marks and citation omitted). And requiring Mr. Flores to serve his 27-month sentence of imprisonment and two-year term of supervised release for violating a statute that cannot constitutionally be applied to him would "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks and citation omitted); *see also, e.g.*, *United States v. Urbina-Fuentes*, 900 F.3d 687, 698 (5th Cir. 2018) (noting that when an error is "'reasonably likely to have resulted in a longer prison sentence than necessary,' 'most defendants' will be entitled to relief" under plain error's final prong) (quoting *United States v. Rosales-Mireles*, 585 U.S. 129, 143 (2018)). If § 922(g)(1) is unconstitutional, this Court should exercise its discretion to vacate Mr. Flores's conviction and remand for further proceedings.

**ISSUE THREE RESTATED:** Whether the warrantless search of Mr. Flores qualified as a search incident to a lawful arrest, when Officer Rivera arrested him for the Texas misdemeanor of criminal trespass that was not committed in her presence, and the Fourth Amendment incorporates the founding-era common-law rule that officers lack authority to make a warrantless arrest for a misdemeanor not committed in their presence. (Foreclosed issue.)

## A. Standard of review.

This Court reviews the denial of a motion to suppress by accepting the district court's factual findings unless clearly erroneous, but reviews the ultimate legal conclusion, including whether an officer had probable cause to make an arrest and whether a search qualifies as incident to a *lawful* arrest, *de novo*. *See, e.g.*, *United States v. Ho*, 94 F.3d 932, 936 (5th Cir. 1996). Mr. Flores acknowledges, as he must, that his argument here is foreclosed by circuit precedent (discussed below). He raises the issue here only to preserve it for further review.

## B. Officer Rivera's warrantless arrest of Mr. Flores for a misdemeanor not committed in her presence was unlawful, so the ensuing search cannot be justified as incident to a lawful arrest.

Mr. Flores contends that Officer Rivera's warrantless arrest of him for a misdemeanor not committed in her presence was unlawful, so the ensuing search cannot be justified as incident to a lawful arrest.

As explained below, a search incident to arrest is valid only when the underlying arrest is lawful. The Fourth Amendment, in turn, incorporates the founding-era common-law rule that officers lack authority to arrest without a

warrant for a misdemeanor not committed in their presence, a rule that applies with even greater force to an offense like criminal trespass, which was not a crime at common law at all absent a breach of the peace. Officer Rivera, however, arrested Mr. Flores for criminal trespass without ever witnessing the offense herself. The arrest was therefore unlawful, and the search that followed cannot be sustained as incident to it.

1. A search incident to arrest is valid only if the underlying arrest is lawful.

A search incident to arrest is only as sound as the arrest itself. As the Supreme Court put it decades ago, "a search without warrant incident to an arrest is dependent initially on a valid arrest." *United States v. Rabinowitz*, 339 U.S. 56, 60 (1950), *overruled on other grounds by Chimel v. California*, 395 U.S. 752 (1969); *accord Riley v. California*, 573 U.S. 373, 382 (2014). This Circuit's own formulation of the exception says the same thing: "[o]ne … exception to the warrant requirement exists for searches incident to a *lawful* arrest." *Ho*, 94 F.3d at 935 (italics added) (citing *United States v. Barlow*, 17 F.3d 85, 89 (5th Cir. 1994)).

Because the exception is defined in terms of a lawful arrest, it simply does not apply when the arrest was not lawful. "If the arresting officers lacked probable cause and the arrest is invalid, evidence discovered as a result of the arrest is subject to suppression under the Fourth Amendment as the 'fruit' of an illegal arrest." *Ho*, 94 F.3d at 935 (quoting *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995)). A

search occurring immediately prior to a custodial arrest can be "considered incident to a lawful arrest" only if "the fruits of the search incident to the arrest [were] unnecessary to support probable cause for the arrest." *Id.* (citing *Rawlings v. Kentucky*, 448 U.S. 98, 111 n.6 (1980), and *United States v. Hernandez*, 825 F.2d 846, 852 (5th Cir.1987)).

The district court applied precisely that framework below, reasoning that "Officer Rivera had probable cause to arrest Flores for criminal trespassing, justifying her initial stop," and that the frisk was therefore valid even though it "occurred before Officer Rivera effectuated the arrest," because the fruits of the frisk did not supply the probable cause for the arrest. ROA.78-79. That reasoning necessarily assumes that Officer Rivera's arrest of Mr. Flores for misdemeanor criminal trespass was itself a lawful warrantless arrest. It was not.

2. <u>The Fourth Amendment incorporates the founding-era common-law rule that officers lack authority to arrest without a warrant for a misdemeanor not committed in their presence.</u>

Founding-era common law "gave officers no authority to make an 'arrest without a warrant, for a mere misdemeanor not committed in [their] presence.'" Statement of Sotomayor, J., respecting the denial of certiorari, *Grandia Gonzalez v. United States*, 604 U.S. ___, 145 S. Ct. 529, 529 (2025) (quoting *Bad Elk v. United States*, 177 U.S. 529, 534-35 (1900)); *accord Kurtz v. Moffitt*, 115 U.S. 487, 498-99 (1885) ("By the common law of England, neither a civil officer nor a private citizen

had the right, without a warrant, to make an arrest for a crime not committed in his presence, except in the case of felony."). That rule was adopted "almost without exception" by the American states after the founding, *Grandia Gonzalez*, 145 S. Ct. at 530, and "most States continue to 'hold to the view that a warrantless misdemeanor arrest may be made only for an offense committed "in the presence"' of the arresting officer," *id.* at 531 (quoting 3 W. LaFave, Search and Seizure § 5.1(c) (6th ed. 2024)), including Texas. *See* Tex. Code Crim. Proc. art. 14.01 (limiting warrantless arrests generally to offenses "committed in his presence or within his view").

The Supreme Court has repeatedly held that the Fourth Amendment "'must provide at a minimum the degree of protection'" the common law afforded when the Amendment was adopted. *Lange v. California*, 594 U.S. 295, 309 (2021) (quoting *United States v. Jones*, 565 U.S. 400, 411 (2012)); *accord Torres v. Madrid*, 592 U.S. 306, 316-17 (2021); *Virginia v. Moore*, 553 U.S. 164, 168 (2008); *Wilson v. Arkansas*, 514 U.S. 927, 931 (1995). Because the common law included an in-the-presence requirement for warrantless misdemeanor arrests, that requirement supplies at least a floor on what the Fourth Amendment permits. *Grandia Gonzalez*, 145 S. Ct. at 531.

3. Mere trespass was not even a crime at common law absent a breach of the peace, confirming that the founding generation afforded no warrantless-arrest authority for conduct like Mr. Flores's.

The historical case for suppression runs deeper still. At common law, an unauthorized entry onto another's land gave rise only to a civil remedy; standing alone, it was not a crime at all. "[T]respass was not a crime at common law … unless it was accompanied by or tended to create a breach of the peace." 3 W. LaFave, Subst. Crim. L. § 21.2 (3d ed. 2025) (quoting *People v. Goduto*, 21 Ill. 2d 605, 174 N.E.2d 385, 387 (1961)); *accord Snead v. Com.*, 212 Va. 803, 188 S.E.2d 197, 199 (1972) (mere "refusal to leave upon order, without more, did not constitute an offense at common law"). It was only in the modern era that legislatures broadened trespass into a freestanding criminal offense, one that today is "considerably broader than at common law" and generally reaches any "unwanted intrusion" onto real property regardless of whether the peace is disturbed. LaFave, *supra*, § 21.2 (quoting Model Penal Code § 221.1 cmt. at 87 (1980)).

This is consistent with the general rule that, outside a handful of jurisdictions retaining common-law offenses by express statute, there was no federal common law of crimes and a state's common-law crimes existed only until legislatively displaced. *See* 1 W. LaFave, Subst. Crim. L. § 2.1(c) (3d ed. 2025) (collecting "reception" statutes and noting that "most states" have since "abolished common law crimes" through comprehensive criminal codes) (citing *United States v. Hudson*

*& Goodwin*, 11 U.S. (7 Cranch) 32 (1812)). Texas is such a jurisdiction: its criminal trespass offense, Tex. Penal Code § 30.05, is a creature of the modern penal code, not a codification of any common-law crime of trespass, because, absent a breach of the peace, no such crime existed to codify.

The same conclusion follows from the founding-era treatment of residential trespass specifically. Early American courts confirmed that a trespass upon a dwelling house, short of a violent taking or withholding of possession, was not itself an offense against the community, and that the act could rise "from a private to a public wrong" only if committed under circumstances necessarily involving, or tending to provoke, a breach of the public peace. *State v. Fort*, 3 & 4 Dev. & Bat. 332, 20 N.C. 332, 1839 WL 521, at *1 (1839). Pennsylvania's high court reached the same result where a defendant broke into another's home at night and, in the ensuing commotion, frightened a resident into a miscarriage: the court allowed prosecution for the separate misdemeanor of malicious mischief, but explained at length why the defendant could not be indicted for criminal trespass. *See Com. v. Taylor*, 5 Binn. 277, 1812 WL 1254, at *2-*5 (Pa. 1812).

This history reinforces, rather than complicates, the argument above. The founding-era common law did not merely withhold warrantless-arrest authority for unwitnessed misdemeanors; for an offense like trespass, it withheld criminal enforcement altogether unless the trespass was accompanied by a breach of the

peace. Mr. Flores was arrested for an entirely peaceable act, walking down a public street, based on a secondhand report that he tried to open a door at a residence covered by an existing criminal-trespass warning. *See* ROA.74-76. Nothing in that conduct approached a breach of the peace. A legal regime that would have treated the underlying conduct as, at most, a civil wrong supplies no historical justification for a warrantless arrest, whether or not the officer witnessed it.

4. Officer Rivera arrested Mr. Flores for a misdemeanor she never personally witnessed.

Criminal trespass is a misdemeanor, not a felony, under Texas law. *See* Tex. Penal Code § 30.05(a) (2024); ROA.176-77, 180 (testimony of Officer Rivera). The district court's own findings establish that Officer Rivera did not witness Mr. Flores commit that offense. She instead relied entirely on secondhand information relayed by dispatch that Mr. Flores had trespassed on property covered by an existing criminal-trespass warning. ROA.74-76, 78-79. That information originated from a report by Mr. Flores's brother, who described security-camera footage showing Mr. Flores trying to open a door. ROA.74-75. By the time Officer Rivera located Mr. Flores roughly five minutes later, he was simply walking down a public street two to three blocks from that property, matching a physical description. ROA.75-76. Officer Rivera then "placed Flores under arrest both for criminal trespass and being a felon in possession of a firearm," but the felon-in-possession basis for the arrest depended entirely on the fruits of the frisk that the criminal-trespass arrest was

invoked to justify, *see* ROA.75-76, and so cannot bootstrap the arrest's legality.

Under the in-the-presence rule described above, Officer Rivera's arrest of Mr. Flores for an offense she never personally observed exceeded her warrantless arrest authority under the Fourth Amendment. Because the arrest was unlawful, the ensuing search cannot be sustained as a search incident to a *lawful* arrest, and the firearm and ammunition recovered from Mr. Flores's pockets should have been suppressed as fruit of that unlawful arrest. *See Ho*, 94 F.3d at 936; *Ordonez v. Gonzalez*, No. EP-23-CV-99-KC, 2024 WL 1250181, at *11-12 (W.D. Tex. Mar. 25, 2024) (a search incident to arrest "requires no additional justification" only "[w]hen the arrest is lawful," and a plaintiff "searched incident to an unlawful arrest" states a viable Fourth Amendment claim); *U.S.A. v. Defendant(s)*, No. CR 24-00210-MWF, 2026 WL 1848549, at *5-6 (C.D. Cal. June 23, 2026) (suppressing firearm evidence because "[a] search incident to an arrest is valid only if the arrest itself is lawful" and the government failed to establish probable cause for the underlying arrest).

**C. This argument is foreclosed by circuit precedent, but Mr. Flores raises it to preserve the issue for further review.**

Mr. Flores recognizes that this Circuit is, in Justice Sotomayor's words, one of "every circuit to face th[e] issue" to have held that the Fourth Amendment does not require that a misdemeanor be committed in an officer's presence before a warrantless arrest may be made. *Grandia Gonzalez*, 145 S. Ct. at 532 (so describing

the circuits' uniform position); *see Fields v. City of South Houston*, 922 F.2d 1183, 1189 (5th Cir. 1991) (holding, in a § 1983 damages suit, that "[t]he United States Constitution does not require a warrant for misdemeanors not occurring in the presence of the arresting officer," and adopting the reasoning of *Street v. Surdyka*, 492 F.2d 368, 371-72 (4th Cir. 1974)); *United States v. Williams*, 111 Fed. Appx. 221, 221-22 (5th Cir. 2004) (unpublished) (applying *Fields*'s Fourth Amendment holding to affirm the denial of a motion to suppress in a criminal prosecution). He raises the issue here solely to preserve it, for the reasons identified by Justice Sotomayor, joined by Justice Gorsuch, in her statement respecting the denial of certiorari in *Grandia Gonzalez*.

As that statement explains, the circuits' rejection of an in-the-presence requirement traces back to *Street v. Surdyka*, 492 F.2d 368, 371-73 (4th Cir. 1974), which rejected the rule as "impractical and illogical" on the premise that the Fourth Amendment had not been understood to give "constitutional force" to common-law arrest rules. *Grandia Gonzalez*, 145 S. Ct. at 532 (quoting *Street*, 492 F.2d at 371). But the Supreme Court's intervening decisions in *Kyllo v. United States*, 533 U.S. 27 (2001), *United States v. Jones*, 565 U.S. 400 (2012), *Virginia v. Moore*, 553 U.S. 164 (2008), *Torres v. Madrid*, 592 U.S. 306 (2021), and *Lange v. California*, 594 U.S. 295 (2021), have since established that the Fourth Amendment must provide, at minimum, the protection the common law afforded at the founding, a premise

*Street* never considered. *Grandia Gonzalez*, 145 S. Ct. at 532. Because the circuit precedent applying *Street*'s reasoning "did not consider that possibility," "it is unclear whether that decision remains good law today." *Id.* Justice Sotomayor accordingly concluded that "[i]n an appropriate case … the Court should grant review to consider whether and to what extent the Fourth Amendment incorporates the in-the-presence rule." *Id.* at 529.

This case is a good vehicle for addressing that question. Unlike *Grandia Gonzalez* itself, which the Court found an "unsuitable case to consider the general rule" because the arrest arguably fell within a historical "nightwalker" exception for suspicious persons encountered before dawn, and because the officers arguably also had probable cause to arrest for felony trespass, *id.* at 8-9, Mr. Flores's arrest presents neither complication. Criminal trespass under Texas Penal Code § 30.05(a) is unambiguously a misdemeanor, *see* ROA.176-77, 180, the encounter occurred at roughly 5:22 p.m. rather than in the early-morning hours associated with the historical nightwalker exception, *see* ROA.90, and nothing about Mr. Flores walking down a public street implicates any comparable exception to the in-the-presence rule. Mr. Flores accordingly preserves this issue for further review.

### D. Neither of the government's alternative theories below would save the search: the *Terry* theory fails on this record, and the consent theory cannot be resolved on this record at all.

In the district court, the government offered two alternative theories to justify the frisk: that it was valid as a *Terry* stop-and-frisk, and, separately, that Mr. Flores consented. *See* ROA.70, 199-203, 204, 212-16. The court described consent as "the weaker of the two" theories offered by the government and never decided it, resolving the suppression motion entirely on the search-incident-to-arrest theory. ROA.79, 216. By the same token, the court never reached the *Terry* theory either, having no occasion to decide whether reasonable suspicion supported the stop or the frisk once it found probable cause for the arrest. ROA.72, 79. If this Court agrees that the arrest was unlawful, the government may be tempted to ask this Court to affirm anyway on one of these unaddressed theories. As explained below, neither theory saves the search: the *Terry* theory fails on the merits, and the consent theory—never decided below—cannot be resolved on this undeveloped record.

*First*, a frisk is a distinct Fourth Amendment event from the stop that precedes it, and it requires its own justification: reasonable, articulable suspicion that the person is armed and presently dangerous, not merely that the stop itself was justified. *See Terry*, 392 U.S. at 27; *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). Whether reasonable suspicion existed is a mixed question this Court reviews *de novo*, accepting the district court's underlying factual findings unless clearly erroneous.

*Ornelas v. United States*, 517 U.S. 690, 699 (1996); *United States v. Tompkins*, 130 F.3d 117, 120 (5th Cir.1997). Here, the district court avoided resolving whether reasonable suspicion of dangerousness existed, ROA.72, 79, but the underlying facts are unrebutted. In its written order, the district court recognized that Officer Rivera testified, on cross-examination, that dispatch gave her no information suggesting Mr. Flores was armed and dangerous, and that Mr. Flores did not appear violent as she approached him. ROA.75; *see* ROA.161, 177-79, 183, 198 (hearing transcript). Because those facts are unrebutted, this Court can and should resolve the *Terry* theory on the existing record, and it should resolve it against the government.

*Second*, the consent theory presents the opposite problem: it cannot be resolved on this record at all, because it turns on genuinely disputed facts the district court never addressed. Whether consent to a search was voluntary is a question of fact, reviewed for clear error, determined from the totality of the circumstances, with the government bearing the burden of proof. *See United States v. Solis*, 299 F.3d 420, 436 (5th Cir. 2002); *Tompkins*, 130 F.3d at 120-21; *United States v. Arias-Robles*, 477 F.3d 245, 248 (5th Cir. 2007); *accord Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). This Circuit weighs six non-dispositive factors: "(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's

education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found." *United States v. Soriano*, 976 F.3d 450, 455 (5th Cir. 2020) (quoting *United States v. Jenson*, 462 F.3d 399, 406 (5th Cir. 2006)). The district court made no findings on any of these factors, because it never needed to reach the consent question. There is accordingly nothing for this Court to review, and this Court is not positioned to make first-instance factual findings on a cold record when the district court that heard the live testimony never did.

Nor does the existing record clearly support voluntary consent, even setting aside the absence of findings. Officer Rivera had already activated her siren and lights, stopped Mr. Flores, and told him that police had received a call about him from his own brother, before she raised the pat-down. ROA.74-75. And even then, she did not simply ask for permission: she announced her intention first and added the request as an afterthought, telling him, "I'm going to pat you down, is it ok if I pat you down?" ROA.75. Consent cannot be shown by a suspect's mere acquiescence to an officer's claim of lawful authority, and an officer who presents a search as something that will happen regardless of the suspect's answer commits the same error the Supreme Court condemned in *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968) ("Where there is coercion there cannot be consent."). A reasonable person could easily hear Officer Rivera's phrasing as notice of what was about to happen rather than a genuine request he was free to refuse, a form of framing

relevant to the custodial-status and coercive-procedure factors alike. At minimum, voluntariness is genuinely disputed on this record and cannot be resolved in the government's favor without the fact-finding the district court never performed.

In sum, if this Court reaches the merits of Mr. Flores's in-the-presence argument and concludes that his arrest was unlawful, it should not affirm on either of the government's unaddressed alternative theories. The consent theory was never decided below, turns on disputed facts the district court did not resolve, and would require a remand, not an affirmance, if the government wishes to pursue it. The *Terry* frisk theory, also never decided below, does not even require a remand: Officer Rivera's own testimony on cross-examination forecloses the required showing of reasonable suspicion that Mr. Flores was presently armed and dangerous, so this Court can resolve it now, against the government. This Court should reverse the district court's order denying the motion to suppress, vacate Mr. Flores's conviction and sentence, and remand for further appropriate proceedings.

## CONCLUSION

For the reasons stated in Issue One, this Court should vacate Mr. Flores's sentence and remand for resentencing.

Mr. Flores raises Issues Two and Three to preserve them for further review, as circuit precedent currently forecloses relief on each. Should this Court reconsider that precedent, it should, on Issue Two, vacate Mr. Flores's conviction and sentence, and, on Issue Three, reverse the district court's order denying the motion to suppress, vacate Mr. Flores's conviction and sentence, and remand for further appropriate proceedings.

Respectfully submitted,

PHILIP G. GALLAGHER
Federal Public Defender
Southern District of Texas

s/ Scott A. Martin
SCOTT A. MARTIN
Assistant Federal Public Defender
Appellate Division Chief
Attorneys for Appellant
440 Louisiana Street, Suite 1350
Houston, Texas 77002-1056
Telephone: (713) 718-4600

## CERTIFICATE OF SERVICE

All parties required to be served with copies of this document have been so served by filing via the Fifth Circuit ECF filing system.

s/ Scott A. Martin
SCOTT A. MARTIN

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,956 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Office 365 (current version) software in Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes.

3. This brief complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because the brief has been redacted of any personal data identifiers.

4. This brief complies with the electronic submission of 5th Cir. R. 25.2.1 because this brief is an exact copy of the paper document.

5. This brief is free of viruses because the brief has been scanned for viruses with the most recent version of a commercial virus scanning program.

s/ Scott A. Martin
SCOTT A. MARTIN